UNITED STATES of America

v.

Raymond Lynn BUCKELEW and
James Laney Jenkins.

UNITED STATES of America

v.

Judson Lee DRANE.

Crim. A. Nos. 20551, 74–21.

United States District Court,
W. D. Louisiana,
Shreveport Division.

May 10, 1977.

R. W. Laster and James F. Lane, Little Rock, Ark., for defendants.

Edward L. Shaheen, U. S. Atty., D. H. Perkins, Jr., Asst. U. S. Atty., Shreveport, La., for United States.

## RULING

### ON MOTIONS TO VACATE OR SET ASIDE SENTENCES

DAWKINS, Senior District Judge.

On February 17, 1977 Raymond Lynn Buckelew and James Laney Jenkins,

through new retained counsel, filed a motion to vacate or set aside sentence. On March 24, 1977 Judson Lee Drane, through the same newly retained counsel, filed a motion to vacate or set aside sentence. These cases are consolidated for determination of the above styled motions.

Present counsel for these petitioners did not participate in pre-trial or trial proceedings. Apparently, his first connection with the case was when, after petitioners' convictions and sentences were affirmed on appeal, and rehearing denied, as set forth infra, he was appointed to represent Buckelew and Jenkins in applying to the Supreme Court for writs of certiorari, which also were denied.

The motions to vacate were brought pursuant to 28 U.S.C. § 2255, amended by Public Law 94–426 of September 28, 1976, 90 Stat. 1334, "Rules governing section 2255 proceedings for the United States district courts", effective February 1, 1977.

On February 17, 1977 Buckelew and Jenkins also filed a motion to continue them on bond or to be enlarged upon a new bond. This motion was referred to James M. Barton, United States Magistrate, in accordance with Local Court Rule 28 C. 8, and 28 U.S.C. § 636(b). The bond hearing was conducted on the afternoon of February 17, 1977 and upon its conclusion petitioners were ordered committed to serve their sentences in accordance with the mandate received by the Clerk of this Court from the United States Court of Appeals for the Fifth Circuit. Following that hearing, Magistrate Barton made a report and recommendation to the Court. After receiving this, a written ruling, with reasons, was entered by the undersigned Judge after considering the case de novo, adopting the Magistrate's report and denying the motion to remain enlarged on bond.

Judson Lee Drane likewise filed a motion to be enlarged on bond on March 24, 1977. A written ruling was made upon this motion on March 25, 1977, denying it for the same reasons set forth earlier with respect to Buckelew and Jenkins.

Through counsel, Buckelew and Jenkins filed a motion to disqualify the undersigned Judge and to transfer the case to another division in this District, or to another judge. Judson Lee Drane later filed the same motion. These motions then were denied as being premature since the record had not been returned from the appellate court, petitioners having appealed their convictions and sentences to the United States Court of Appeals for the Fifth Circuit, which affirmed their convictions and sentences, United States v. Scallion, et al., 533 F.2d 903 (5th Cir., 1976). Buckelew and Jenkins, through counsel, then twice applied for writs of certiorari to the United States Supreme Court. These were denied. After his report and recommendations were made by Magistrate Barton, petitioners Buckelew and Jenkins filed a motion to vacate his ruling, report and recommendation, and also that he, too, be disqualified from further performance of his § 2255 duties under the terms and provisions of 28 U.S.C. § 455(b)(1).

Before proceeding further, we must deal with the auxiliary motion to disqualify the undersigned Judge from this proceeding. Any opinion a trial judge may have had as to any of the defendants, which was not obtained from extrajudicial sources, but only from the Court's handling of the defendants during trial, is not a basis for disqualifying that judge from passing upon this § 2255 motion.

In Morrison v. United States, 432 F.2d 1227 (5th Cir., 1970), the Court stated:

"There is no merit to the contention that the District Judge, who as sentencing judge had seen appellant's presentence report, was barred as a matter of law from acting on the motion to vacate because possessed of information concerning the appellant not formally introduced into evidence. For sound reasons the sentencing judge is allowed to have and to employ that data in the first instance. His knowledge does not bar him from acting on a § 2255 motion."

In United States v. Franks, 511 F.2d 25 (6th Cir., 1975), the Court stated:

"The claim that the district judge should have recused himself from trying Mitchell is untenable. First, there is no showing that Mitchell's attorney of record certified the good faith of Mitchell's affidavit claiming bias and prejudice. *United States v. Thomas*, 299 F.Supp. 494, 500 (E.D.Mo.1968). Second, even assuming procedural compliance with 28 U.S.C. § 144 (1970), Mitchell's allegations that the district judge had cited him for contempt at best demonstrate judicial, as opposed to personal bias. *Oliver v. Michigan State Bd. of Educ.*, 508 F.2d 178 (6th Cir., 1974); *United States v. Roca-Alvarez*, 451 F.2d 843, 848 (5th Cir., 1971); *Hanger v. United States*, 398 F.2d 91, 100–1001 (8th Cir., 1968), cert. denied, 393 U.S. 1119, 89 S.Ct. 995, 22 L.Ed.2d 124 (1969); *United States v. Garrison*, 340 F.Supp. 952, 956–957 (E.D.La.1972). Third, much of Mitchell's affidavit contains 'scurrilities and generalities [which fall] far short of the specificities required by statute.' *Griffith v. Edwards*, 493 F.2d 495, 496 (8th Cir., 1974); *Martelli v. City of Sonoma*, 359 F.Supp. 397, 400 (N.D.Cal.1973)."

In *Beland, et al. v. United States*, 117 F.2d 958 (5th Cir., 1941), an affiant expressed fear that the judge was not impartial, said fear having been increased by the severity of sentences imposed in other narcotic cases. The Court held the allegations did not satisfy the statute which was designed to disqualify a judge because of personal bias and prejudice and not because of his rulings and sentences which were not acceptable to the affiant.

In *Barry v. Sigler*, 373 F.2d 835 (8th Cir., 1967), the Court stated:

"Merely because a trial judge is familiar with a party and his legal difficulties through prior judicial hearings, or has found it necessary to cite a party for contempt, does not automatically or inferentially raise the issue of bias. As stated by the court in *Lyons v. United States*, 9 Cir. 1963, 325 F.2d 370, 376, cert. den. 377 U.S. 969, 84 S.Ct. 1650, 12 L.Ed.2d 738, which ruled that affidavits filed under § 144 were legally insufficient: 'The section [144] is directed to personal bias, which means an attitude of extrajudicial origin. A mere showing of prior judicial exposure to the present parties or questions will not invoke the section.' See also *Cox v. United States*, 8 Cir. 1962, 309 F.2d 614, 619–620; *Barnes v. United States*, 9 Cir., 1956, 241 F.2d 252; *United States v. Lowrey*, W.D.Pa. 1948, 77 F.Supp. 301, 302, aff'd 172 F.2d 226 and 179 F.2d 964, cert. den. 339 U.S. 969, 70 S.Ct. 986, 94 L.Ed. 1377; *United States v. Sansone*, 2 Cir., 1963, 319 F.2d 586."

See also, *United States v. Avilla*, 443 F.2d 792 at 794, 795 (5th Cir., 1971).

■ Even where allegations of bias are made pursuant to the provisions of 28 U.S.C. § 144, and the Court finds the factual allegations to be legally insufficient, there arises a duty on the part of the judge to continue in the case. See *Firnhaber v. Sensenbrenner, Jr.*, 385 F.Supp. 406 (E.D. Wis., 1974); *United States v. Sclafani*, 487 F.2d 245 (2d Cir., 1973), cases cited at p. 255, cert. denied, 414 U.S. 1023, 94 S.Ct. 445, 38 L.Ed.2d 313 (1973).

Accordingly, it being our *duty* to hear this matter, the motion to disqualify or to transfer this matter hereby is denied.

On February 25, 1977, in accordance with Rule 4 of § 2255, by memorandum order, we directed the United States Attorney to file an answer, supported by brief, to the motion to vacate or set aside sentence, and motion to disqualify filed by Buckelew and Jenkins, within twenty (20) days after receipt of the complete record in the case by the Clerk of this Court from the Appellate Court. A similar order was entered in the matter of Judson Lee Drane, ordering the United States Attorney to file an answer to the motions Drane had filed in the case, together with a brief and any pertinent records. The record and exhibits were returned to this Court on March 31, 1977; and on April 11, 1977 the United States Attorney filed a response and supporting brief. Attached to his response are the affidavits of the two Assistant United States Attor-

neys who prosecuted the case, Messrs. L. Edwin Greer and Joseph Cage, who now are in private practice. Also attached is an affidavit made by Special Agent John Pfeifer, FBI, who was in the courtroom throughout trial.

Buckelew and Jenkins, in their motion to vacate or set aside sentence, made a "statement of the case" asserting that "on September 24, 1974, after pleas of not guilty, they and the other defendants went to trial in the United States District Court for the Western District of Louisiana, Shreveport Division, before the Honorable Ben C. Dawkins, Jr., for allegedly defrauding certain Las Vegas hotel casinos by means of telephone calls, in violation of 18 U.S.C. § 1343, and allegedly conspiring to commit fraud in violation of 18 U.S.C. § 371. These defendants did not testify at their trial. [Obviously because of criminal records. See the records of Buckelew, Jenkins and Drane, as shown by Xerox copies of excerpts from their pre-sentence reports, appended.] On October 4, 1974 the jury convicted these two defendants on both counts, and each was sentenced to three years on each count, the sentences to run consecutively. Drane was convicted on the conspiracy count, and was sentenced to three years imprisonment.

"Timely appeal was taken to the United States Court of Appeals for the Fifth Circuit, which affirmed the convictions on June 17, 1976, rehearing denied on August 27, 1976. They further state that on August 5, 1976, Thomas L. Robinson, Esq. of Memphis, Tennessee, counsel for these defendants at their trial and on their appeal to the Fifth Circuit, became ill and completely incapable of continuing or tending [sic] to his practice. On September 14, 1976 the Fifth Circuit appointed the undersigned counsel (R. W. Laster, Esq.) who theretofore had had no involvement in these defendants' case, for the express purpose of preparing and filing a petition for a writ of certiorari to the United States Court of Appeals for the Fifth Circuit [sic] on behalf of defendants, which was denied on January 25, 1977. They state that no other petitions, motions or applications with respect to these two defendants' sentences herein have been presented in any federal court."

A similar statement of the case was made on behalf of Drane, with the exception that no writ applications were made to the United States Supreme Court.

Petitioners Buckelew and Jenkins make the following contentions as grounds for their motion to vacate:

"Count I—Incompleteness of the record of the trial court proceedings.

Count II—Physical and mental condition of Thomas L. Robinson.

Count III—Conduct of the trial judge.

Count IV—Conduct of the bailiff.

Count V—Conduct of the plea bargaining and indigency proceedings."

Defendant Drane makes the same contentions as Bukelew and Jenkins as to Counts I, III, and IV.

As noted, the full record has been returned by the appellate court to the Clerk of this Court. The government has filed a response, including affidavits which are permitted under Rule 5 of Section 2255, (see Advisory Committee Note) and also has filed a memorandum brief supporting its answer. After careful review of the entire record and the response by the Government, we conclude that, in accordance with Rule 8 of § 2255, there is no necessity for an evidentiary hearing in deciding these motions since the record supports all of the facts and conclusions we make, and will afford defendants a complete review.

After a two-week trial, conviction and sentencing by this Court, all defendants appealed to the United States Court of Appeals for the Fifth Circuit. Each defendant, through counsel, in filing numerous motions before, during and after trial, adopted each other's motions so that each defendant would be afforded the benefit of any motion filed by any one of the defendants. The Fifth Circuit, after considering all assignments of error alleged by each of the defendants, affirmed petitioners' convictions and sentences on June 17, 1976 and denied rehearings on August 27, 1976.

*United States v. Scallion*, 533 F.2d 903. The Circuit Court, in considering all motions presented, gave a full statement of the case. This showed, *inter alia*, that the total amount of money all of the defendants received by defrauding the hotel casinos (including Gerald Lee Ray, who pleaded guilty and testified as a Government witness) to be approximately $106,000.00.

The Court of Appeals had the full record before it when considering the appeal of all defendants. This shows clearly that this Court and the Appellate Court already have considered each of the contentions now presented.

The Government, in its answer, correctly argues that these defendants now are seeking to use their § 2255 motion as a device to obtain new trials instead of properly presenting their contentions on appeal of their case. It is fundamental that a § 2255 motion is not a substitute for an appeal. *Brown v. United States*, 480 F.2d 1036 (5th Cir., 1973); *Floyd v. United States*, 365 F.2d 368 (5th Cir., 1966). Hence, trial errors that could have been raised on appeal cannot form the basis of a collateral attack upon the verdict. We are aware, of course, that if a *fundamental* right has been violated and could not have been presented on appeal, it may be presented in a collateral attack through a § 2255 motion. We find no such fundamental right presented here which was not presented during trial or on appeal. All of the contentions now made by each of these defendants were before the court during the trial, as the presiding Judge.

We now consider *seriatim* each of the contentions presented by these defendants:

Count I alleges that the record is incomplete; that the court reporter intentionally omitted many of the Judge's remarks, comments, jokes, stories, and personal remembrances; that, although asked by counsel to record the proceedings accurately, he refused to do so. The record discloses that a full and accurate report was made of the entire proceedings during the trial and presented a complete record for review and consideration by the Appellate Court. There is noth-

ing in this contention showing any prejudice to any of the defendants. Clearly, if there was any substance to this, with four able defense counsel representing them, they would have insisted on making a record of this.

In Count II Messrs. Buckelew and Jenkins allege that the physical and mental condition of their retained counsel, Thomas L. Robinson, Esq., deteriorated to such a great extent that his services were ineffective and they were not afforded effective assistance of counsel during the trial and on appeal. We find this contention to be wholly without merit. The record clearly shows that Mr. Robinson, a former United States Attorney himself, was most effective and competent as shown by the numerous motions he filed before trial, objections during trial, and in post-trial motions. He also presented many points considered by the Court on appeal. The Court personally observed his demeanor and performance during the course of the trial and at the numerous conferences held among counsel and the Trial Judge. He presented a vigorous defense of his clients, and in fact, the record shows he was lead counsel during trial. The 1973, 1974 and 1975 editions of Martindale-Hubbell Law Directory show that Mr. Robinson (who now is dead and unable to defend himself against such ridiculous charges) was born in 1907 and admitted to practice law in 1929, with an L.L.B. degree. He enjoyed a rating of "a v", which showed that, among his fellow lawyers and judges, he had considerable legal ability and a high general character and reputation. This category embraces a faithful adherence to ethical standards, professional reliability and diligence, and other such factors. Mr. Robinson demonstrated all these characteristics in defense of his clients at trial. The Fifth Circuit had reason to comment upon one of the contentions by Jenkins on appeal, in reference to Mr. Robinson, at fn. 20, on Page 920, of its decision. The Court made the following statement:

"Jenkins argues that there was a clear violation of Federal Rule of Criminal Procedure 32(a), in that before sentencing he

was not afforded an opportunity to make a statement in his own behalf, and to present any information in mitigation of punishment. We note that over four pages of the transcript are devoted to his counsel's moving statement in his behalf in mitigation of punishment, and that he gave no indication that Jenkins himself wished to make an additional statement. . . ."

Mr. Robinson's conduct before, during and after trial comported with all recognized standards of legal advocacy and was in accord with recognized jurisprudence pertaining to appointed and retained counsel. *MacKenna v. Ellis*, 280 F.2d 592 (5th Cir., 1960), cert. den., 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78; *Arnold v. Wainwright*, 516 F.2d 964 (5th Cir., 1975); *Bartelt v. United States*, 505 F.2d 647 (5th Cir., 1974); *Fitzgerald v. Estelle*, 505 F.2d 1334 (5th Cir., 1974); and *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).

■ Count III sets forth a lengthy diatribe as to the conduct of the Trial Judge. But, nowhere is any specific reference made as to any remark which might have been made by the Trial Judge which would have influenced the jury against any of the defendants. Many of the assertions listed under this count are totally untrue. For example, the claim that the trial judge went to sleep in the middle of his jury charge is a physical impossibility. This well could be said to characterize all of these defendants' accusations. This contention also has been ruled upon by the Fifth Circuit in its review of the case on appeal. At 533 F.2d 913, Paragraph 9, the Court found that no bias or prejudice was shown by the Judge during the trial. At p. 919 the Court considered the motions for a new trial, and at fn. 19 made this ruling:

"Our disposition of this issue also disposes of the issue of whether the conduct of the trial and demeanor of the presiding Judge violated appellants' rights to due process of law."

There is no merit in Count III.

Count IV urges that there was misconduct committed by the bailiff of this Court.

This contention likewise has been presented to and ruled upon by the Fifth Circuit in its decision at p. 920 (beginning at Paragraph 24 on Page 919). The Court's language is that "to suggest that appellants were prejudiced appears to be pure speculation." We, too, find this contention to be wholly speculative and without basis in fact.

Count V alleges that the conduct of plea bargaining and indigency proceedings was detrimental to them. Buckelew and Jenkins indicate that they were dissatisfied with their representation by Mr. Robinson. They state that he attempted to enter into a plea bargain without their authority. This, also, appears to be pure speculation since no plea bargain ever was mentioned to this court, and especially not at trial. Following trial and conviction of Buckelew and Jenkins, it was ascertained that they were without funds to prosecute their appeals. In all fairness to them, it was considered that their trial counsel should be the court-appointed attorney to represent them on appeal. Accordingly, after they properly executed an affidavit of indigency, Mr. Robinson was appointed to represent them. The record shows that he vigorously appealed their case. This indigency contention was noted and ruled upon at 533 F.2d at p. 920, paragraph 25, where the Court of Appeals determined that no prejudice was shown.

■ We find no new contentions by defendants which rise to constitutional proportions. Their collateral attacks upon their convictions and sentences have been considered by this Court and by the Court of Appeals. Under the provisions of 28 U.S.C. § 2255, Rule 9(b), we are not required to consider them again. Moreover, should we perchance be in error in any way, petitioners' failure to assert any such grounds in their motions for a new trial "constituted an abuse of the procedure governed by these rules". (Final sentence, Rule 9(b). *United States ex rel. Wilson v. Follette*, 438 F.2d 1197, cert. den., 402 U.S. 997, 91 S.Ct. 2182, 29 L.Ed.2d 163; *Williams v. United States*, 426 F.2d 253, cert. den.,

400 U.S. 881, 91 S.Ct. 125, 27 L.Ed.2d 119 (9th Cir., 1970); *Williams v. United States,* 466 F.2d 672; *Ugarte-Veizaga v. United States,* 452 F.2d 1194 (5th Cir., 1972).

Accordingly, finding no merit in any of the contentions presented by Buckelew, Jenkins and Drane, their motions to vacate or set aside their sentences are DENIED.

APPENDIX

*(handwritten notations)* 3 yrs on 1 Same on VI To run cons.

| | | |
|---|---|---|
| PROBATION FORM 2 FEB 65 | UNITED STATES DISTRICT COURT WESTERN DISTRICT OF LOUISIANA MONROE DIVISION PRESENTENCE REPORT | |

NAME Raymond Lynn Buckelew

DATE November 5, 1974

ADDRESS Garland County Jail Hot Springs, Arkansas

DOCKET NO 20,551

OFFENSE 18 USC 1343 & 371 Fraud by Wire and Conspiracy to Commit Fraud — Two counts

LEGAL RESIDENCE c/o Mr. Bordy Morris P. O. Box 441 Lake Hamilton Hot Springs, Arkansas

AGE 44 DATE OF BIRTH February, 22, 1930

PENALTY
Count I: $ 1,000.00 and/or 5 years
Count VI: $10,000.00 and/or 5 years

SEX Male RACE Caucasian

CITIZENSHIP United States

PLEA

EDUCATION Eighth grade

VERDICT Guilty as to both counts October 4, 1974

MARITAL STATUS Divorced

CUSTODY $10,000.00 bond

DEPENDENTS None

ASST U S ATTY Joe Cage

SOC SEC NO 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

FBI NO 992 576 C

DEFENSE COUNSEL Thomas Lee Robinson 234 Adams Street Memphis, Tennessee Telephone: 525-0492 Retained

DETAINERS OR CHARGES PENDING:
TEXAS STATE PROBATION & PAROLE DEPARTMENT — Probation violation.
GARLAND COUNTY, ARKANSAS SHERIFF'S OFFICE — Assault on a police officer, illegal possession of a .45 caliber pistol, attempted burglary and assault.
XXXXXXXXXX *(Deposition)*
COOFFENDERS — Judson Lee DRANE, Claude John SCALLION, James Laney JENKINS and James W. GRAVES — convicted by jury 10-4-74 and awaiting sentence.
Gerald Lee RAY — Guilty plea 8-12-74 and awaiting sentence.
DISPOSITION

DATE

SENTENCING JUDGE

**976**

Raymond Lynn Buckelew
Presentence Report

OFFENSE:

The defendant is charged in count one and count six of a six-count indictment specifying fraud by wire and conspiracy to commit fraud by wire. Count one charges that on or about April 22, 1970 as part of a fraudulent scheme he caused a wire communication to be transmitted from Las Vegas, Nevada to Ferriday, Louisiana. Count six alleges that during the period extending from April 3, 1970 until June 23, 1970 he participated with Claude John Scallion, Gerald Lee Ray, James Laney Jenkins, Stephen A. Welch and James W. Graves in a conspiracy to commit fraud by wire by transmitting false information between Las Vegas, Nevada hotels and the Delta Security Bank & Trust Company in Ferriday, Louisiana. Buckelew was indicted on these charges on October 12, 1973 and was taken into federal custody in the Western District of Arkansas on October 18, 1973 at which time he was released under $10,000.00 bond. He pleaded not guilty on November 19, 1973 and appeared for trial before the Honorable Ben C. Dawkins, Jr. in Shreveport, Louisiana on September 30, 1974 which led to a conviction on both counts charged in his case on October 4, 1974. At that point imposition of sentence was deferred and a presentence investigation was ordered.

Investigation reveals that in early March, 1970 Judson Lee Drane and Clyde R. Rhoads developed a scheme to defraud Nevada hotels and gambling casinos. They enlisted the assistance of James W. Graves who was executive vice-president of the Delta Security Bank & Trust Company in Ferriday, Louisiana and a key figure since he would provide false information regarding bank accounts and financial solvency. During the next four months Rhoads, Buckelew, Scallion, Ray, Jenkins and Welch opened accounts at the Delta Security Bank & Trust Company with deposits of $50.00 or $100.00. They then negotiated a total of $106,000.00 in checks in Reno and Las Vegas, Nevada which were honored principally because favorable bank information was provided by James W. Graves via wire communication with hotel personnel in Nevada. Stop payment orders were then executed at the bank and the checks were returned to the recipient in Nevada. It is reported by one of the conspirators that the negotiator of the check received one-third of the money illegally obtained and that Drane and Graves each received a third although there are indications that this does not hold true completely. In any event a conspiracy existed and all parties benefited materially from the fraudulent scheme.

The defendant acknowledges that he negotiated $25,000.00 in checks at the International Hotel in Las Vegas, Nevada which he did not have the funds to cover but he denies

participation in a conspiracy. He claims that he was in Las Vegas with Clyde R. Rhoads who is now deceased and that Rhoads told him that he had established a checking account for him in the Delta Security Bank & Trust Company in Ferriday, Louisiana and that he could write checks and they would be covered. Buckelew maintains that Rhoads had developed what he considered to be a system whereby he could beat the gaming tables in Las' Vegas casinos and wanted Buckelew to help him. It is his statement that he lost the $25,000.00 which he received from writing checks and never shared the money with anyone else. His statement is not credible and thorough investigation on the part of the Federal Bureau of Investigation indicates that this is an attempt to shift blame and that he was very much a part of the overall conspiracy.

PRIOR RECORD:

Subject was first arrested on August 16, 1957 by the police department of Grand Junction, Colorado at which time he was charged with disorderly conduct and fighting. He was convicted of these offenses on August 17, 1957 and was sentenced to pay a $10.00 fine.

On September 17, 1958 he was arrested by the police department of Grant, New Mexico on charges of drunk and disorderly conduct and disturbing the peace. Police records do not reflect a disposition but he recalls that he received a small fine.

Subject was arrested by the Reno, Nevada Police Department on August 24, 1963 on a charge of drunk and disorderly conduct. There is no official record of the disposition but he states he was sentenced to jail for a period of twelve days.

Buckelew was arrested by the Dayton, Ohio Police Department on September 24, 1965 for investigation of larceny by trick. The charge was subsequently dismissed on January 17, 1966. The defendant states that on this occasion he was with Clyde R. Rhoads who was running the "green goods" con scheme and that charges were dismissed because of insufficient evidence.

On December 21, 1966 he was arrested by Albuquerque, New Mexico police on a charge of being drunk. He pleaded guilty to this charge on December 27, 1966 and was released on bond pending a presentence report; however, he failed to appear in court when he was subsequently scheduled for disposition and his bond was forfeited.

The defendant was arrested on April 2, 1971 by Hot Springs, Arkansas police on a charge of public drunkenness and subsequently forfeited a $24.00 bond.

He was next arrested by the Houston, Texas Police Department on November 9, 1972 on a charge of carrying a pistol and breaking and entering a coin-operated machine. He was convicted of breaking and entering a coin-operated machine on August 17, 1973 and was given a three year suspended sentence and three years supervised probation. His supervision was subsequently transferred to the State of Arkansas under the Interstate Compact Agreement and as of October 30, 1974 his probation officer there recommended a rule to show cause and a violator's warrant to Texas authorities in view of an arrest by Garland County, Arkansas authorities on multiple charges on that date.

While the above case was pending Buckelew was arrested by officers of the police department at Jackson, Tennessee on a charge of attempting to obtain property by false pretense and attempting to commit larceny. On January 30, 1973 he pleaded guilty to the charge of common-law solicitation, a misdemeanor, in Madison County Court in Jackson, Tennessee and was sentenced to pay a fine of $200.00 and serve thirty days in jail. Investigation in this case indicates that he was attempting to victimize someone in Jackson, Tennessee with the "green goods" con scheme.

On October 30, 1974 subject was arrested by the Garland County, Arkansas Sheriff's Office in Hot Springs, Arkansas on charges of assaulting a police officer, a convicted felon carrying a prohibited weapon, to-wit: a .45 caliber automatic pistol, attempted burglary, public drunk and assault on a person by the name of Shirley Sanders. He is held by Garland County authorities in lieu of $15,000.00 bond. The investigative officer in this case advises that on the date in question Buckelew attempted to break into the home of his former wife after earlier indicating that he planned to kill her. It is significant that he was under a $500.00 peace bond at the time of the incident and that several lives were put in jeopardy prior to and during his arrest. Because of this arrest and a probation violator's detainer he will more than likely have to be secured on a writ for sentencing.

**979**

*Right of appeal* *Byrnes on IV*
*Same on VI*
*To run*
*conc.*

PROBATION FORM 2
FEB 65

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION
**PRESENTENCE REPORT**

| | | | |
|---|---|---|---|
| **NAME** | James Laney Jenkins | **DATE** | November 8, 1974 |
| **ADDRESS** | 5247 Long Meadow Drive Memphis, Tennessee | **DOCKET NO** | 20,551 |

**OFFENSE** Fraud by Wire and Conspiracy to Commit Fraud by Wire

**LEGAL RESIDENCE** Same

18 USC 1343 and 371
Two counts

**AGE** 39 **DATE OF BIRTH** September 24, 1935 **PENALTY**

Count IV: $1,000.00 and/or 5 years
Count VI: $10,000.00 and/or 5 years

**SEX** Male **RACE** Caucasian

**CITIZENSHIP** United States **PLEA**

**EDUCATION** Ninth grade **VERDICT** Guilty as to both counts October 4, 1974

**MARITAL STATUS** Married **CUSTODY** $10,000.00 bond

**DEPENDENTS** Two **ASST U S ATTY** Joe Cage

**SOC SEC. NO** 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

**DEFENSE COUNSEL** Thomas Lee Robinson
2340 Adams Street
Memphis, Tennessee
Telephone: 525-0492
Retained

**FBI NO** 21 150 H

**DETAINERS OR CHARGES PENDING:**

None.

XHDIXPHOXXIX (Required)

COOFFENDERS - Judson Lee DRANE, Raymond Lynn BUCKELEW; Claude John SCALLION and James W. GRAVES - convicted by jury 10-4-74 and awaiting sentence. Gerald Lee RAY - Guilty plea 8-12-73 and awaiting sentence.

**DISPOSITION**

**DATE**

**SENTENCING JUDGE**

**980** 

James Laney Jenkins
Presentence Report

OFFENSE:

 The defendant is charged in count four and count six
of a six-count indictment alleging fraud by wire and conspiracy
to commit fraud by wire. Count four specifies that on or about
May 29, 1970 as part of a fraudulent scheme he caused a wire
communication to be transmitted from Las Vegas, Nevada to
Ferriday, Louisiana. Count six charges that during the period
extending from April 3, 1970 until June 23, 1970 he participated
with Raymond Lynn Buckelew, Claude John Scallion, Gerald Lee Ray,
Stephen A. Welch and James W. Graves in a conspiracy to commit
fraud by wire by transmitting false information between Las Vegas,
Nevada hotels and the Delta Security Bank & Trust Company in
Ferriday, Louisiana. He was indicted on these charges on October
12, 1973 and was taken into custody by the United States Marshal
in Memphis, Tennessee on October 18, 1973 at which time he was
released under a $10,000.00 bond. He pleaded not guilty when he
appeared in court· in Alexandria, Louisiana on November 19, 1973
and was convicted on October 4, 1974 during a trial before the
Honorable Ben C. Dawkins, Jr. which commenced on September 30,
1974. Following conviction the Court deferred imposition of
sentence pending a presentence investigation.

 Investigation reveals that in early March, 1970 Judson
Lee Drane and Clyde R. Rhoads developed a scheme to defraud Nevada
hotels and gambling casinos. They enlisted the assistance of James
W. Graves who was executive vice-president of the Delta Security
Bank & Trust Company in Ferriday, Louisiana and a key figure since
he would provide false information regarding bank accounts and
financial solvency. During the next four months Rhoads, Buckelew,
Scallion, Ray, Jenkins and Welch opened accounts at the Delta
Security Bank & Trust Company with deposits of $50.00 or $100.00.
They then negotiated a total of $106,000.00 in checks in Reno and
Las Vegas, Nevada which were honored principally because favorable
information was provided by James W. Graves via wire communication
with hotel personnel in Nevada. Stop payment·orders were then
executed at the bank and the checks were returned to the recipient
in Nevada. It is reported by one of the conspirators that the
negotiator of the check received one-third of the money illegally
obtained and that Drane and Graves each received a third although
there are indications that this does not hold true completely. In
any event a conspiracy existed and all parties benefited materially
from the fraudulent scheme.

 When interviewed prior to the presentence investigation
the defendant declined to make a statement regarding his involve-
ment in the conspiracy and the fraud perpetrated against the Las
Vegas, Nevada hotels in·1970. Intense investigation in his case

reflects that he did participate in the conspiracy and was personall,
responsible for the issuance of $20,000.00 in worthless checks at
the Sands Hotel in Las Vegas, Nevada. In this regard he has not
demonstrated a contrite attitude. Investigation reveals that since
his conviction he has devoted much of his time to justifying why
he should remain in the community, particularly in relation to his
wife's health.

PRIOR RECORD:

On March 14, 1969 the defendant was arrested by police
officers in Baton Rouge, Louisiana on a charge of gambling. He
was subsequently released on bond and his case was never brought
to trial. Investigative officers report that on March 14, 1969
at 4:30 A.M. plainclothes detectives went to the Sports Bar &
Lounge in Baton Rouge, Louisiana where they had previously monitored
gambling activities. When they entered the room where gambling was
taking place the defendant was sitting behind a desk with an open
drawer which contained $487.00 in cash. The desk also contained
poker chips, playing cards, horse racing forms and a telephone with
amplifier. Upon arrest Jenkins indicated that he was unemployed
but he had $2,100.00 in his pockets. It is not known why prosecu-
tion was not pursued in this instance.

On August 28, 1969 Jenkins was arrested by the United States
Marshal in Tulsa, Oklahoma on an unlawful flight warrant out of
the Eastern District of Louisiana in connection with grand theft
charges in Baton Rouge, Louisiana. He was turned over to the
sheriff's office in Tulsa, Oklahoma and was subsequently released
under a $5,000.00 bond in connection with East Baton Rouge Parish
charges. East Baton Rouge Parish records do not reflect a dis-
position of this charge but the defendant states that he later
was granted a reduction in bond to $1,000.00 and was never required
to answer to this charge. It is reported by investigative officers
in this instance that subject was involved in the theft of a mobile
radio from a state agency car.

982

*Roger a. Typ ar* 3 yrs

| | |
|---|---|
| PROBATION FORM 2<br>FEB 65 | UNITED STATES DISTRICT COURT<br>WESTERN DISTRICT OF LOUISIANA<br>MONROE DIVISION<br>**PRESENTENCE REPORT** |

NAME Judson Lee Drane

DATE October 30, 1974

ADDRESS P. O. Box 688
 Ferriday, Louisiana 71334

DOCKET NO 74-21

OFFENSE 18 USC 1343 and 371
Conspiracy to Commit Fraud by Wire
One count

LEGAL RESIDENCE Same

AGE 46 DATE OF BIRTH July 16, 1928

PENALTY $10,000.00 and/or 5 years

SEX Male RACE Caucasian

CITIZENSHIP United States

PLEA

EDUCATION Fifth grade

VERDICT Guilty - October 4, 1974

MARITAL STATUS Separated

CUSTODY $20,000.00 bond

DEPENDENTS Three

ASST U S ATTY Joe Cage

SOC SEC NO 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

DEFENSE COUNSEL Michael T. Pulaski
 P. O. Box 1791
 Alexandria, Louisiana
 71301
 Telephone: 445-3631
 Appointed

FBI NO 412 555 H

DETAINERS OR CHARGES PENDING:

Cooffenders
XXXWXXXWXX *(1 apart in)*
Raymond Lynn BUCKELEW, Claude John SCALLION, James Laney JENKINS and
James W. GRAVES - convicted by jury 10-4-74 and awaiting sentence.
Gerald Lee RAY - Guilty plea 8-12-73 and awaiting sentence.
DISPOSITION

DATE

SENTENCING JUDGE

Judson Lee Drane
Presentence Report

OFFENSE:

The defendant is charged in a one-count indictment alleging that during the period extending from April 3, 1970 until June 23, 1970 he conspired with Raymond Lynn Buckelew, Claude John Scallion, Gerald Lee Ray, James Laney Jenkins, Stephen A. Welch and James W. Graves to defraud Las Vegas, Nevada hotels by use of wire communications. He was indicted in this case on January 25, 1974 and was taken into custody on February 4, 1974. He was released under $20,000.00 bond the same date and appeared for arraignment in Alexandria, Louisiana on February 19, 1974 at which time he entered a plea of not guilty. He went to trial before the Honorable Ben C. Dawkins, Jr. in Shreveport on September 30, 1974 and was convicted on October 4, 1974. At that time imposition of sentence was deferred pending a presentence investigation.

Investigation reveals that in early March, 1970 Judson Lee Drane and Clyde R. Rhoads developed a scheme to defraud Nevada hotels and gambling casinos. They enlisted the assistance of James W. Graves who was executive vice-president of the Delta Security Bank & Trust Company in Ferriday, Louisiana and a key figure since he would provide false information regarding bank accounts and financial solvency. During the next four months Rhoads, Buckelew, Scallion, Ray, Jenkins and Welch opened accounts at the Delta Security Bank & Trust Company with deposits of $50.00 or $100.00. They then negotiated a total of $106,000.00 in checks in Reno and Las Vegas, Nevada which were honored principally because favorable bank information was provided by James W. Graves via wire communication with hotel personnel in Nevada. Stop payment orders were then executed at the bank and the checks were returned to the recipient in Nevada. It is reported by one of the conspirators that the negotiator of the check received one-third of the money illegally obtained and that Drane and Graves each received a third although there are indications that this does not hold true completely. In any event a conspiracy existed and all parties benefited materially from the fraudulent scheme.

The defendant flatly denies that he participated in this criminal conspiracy although he acknowledges that he knew the participants and was associated with them from time to time.

PRIOR RECORD:

Subject is known as a professional gambler but he has few convictions for related offenses.

On March 16, 1956 he was arrested by Adams County authorities in Natchez, Mississippi for threatening a person but he was released without prosecution.

On October 10, 1956 he was arrested by the Natchez, Mississippi Police Department for reckless driving and was assessed a fine of $25.00.

On November 4, 1956 he was arrested by Adams County authorities in Natchez, Mississippi for fighting, disturbing the peace, and threatening a person but charges were subsequently dismissed.

On June 16, 1958 he was arrested by Adams County authorities in Natchez, Mississippi for child neglect but this charge was dismissed.

On January 16, 1964 he was arrested by Concordia Parish authorities on charges of battery and selling alcoholic beverages to a minor, but charges were dismissed.

On March 6, 1964 he was arrested by Concordia Parish officials in Vidalia, Louisiana for operating a gambling device and was fined $100.00.

On November 5, 1965 he was indicted in Concordia Parish, Louisiana for aggravated battery against Wayland Clifford Fawcette and was released under $750.00 bond. This case was never brought to trial.

On December 9, 1966 Drane was arrested by Concordia Parish officials on five charges of operating gambling devices and subsequently received an aggregate fine of $250.00.

On December 10, 1968 the defendant was arrested by the United States Marshal in Monroe, Louisiana on a two-count indictment charging him with violation of civil rights and conspiracy to violate civil rights. He was convicted of violation of civil rights on March 27, 1970 and on June 18, 1970 he was given a one year sentence with all in excess of six months suspended and four years supervised probation to follow his period of confinement. He appealed the conviction but it was subsequently affirmed and he began serving his sentence on June 3, 1972. He was released at the expiration of his six month sentence with good time on October 16, 1972 and began his probationary period that date. He has been generally cooperative with the probation office and it is significant that his present conviction involves offenses which were committed prior to the beginning of his probationary period. Drane was charged in this case, along with Edward W. Fuller and Frank DeLaughter with beating Drane's former employee, Wayland Clifford Fawcette on October 20, 1965 in an attempt to recover an electric motor which was part of a slot machine which was reportedly seized from property of the defendant.